Robert H. RICE, Plaintiff-Appellant,

Carlton M. Glenn, Intervenor,

v.

GATES RUBBER COMPANY,
Defendant-Appellee.

No. 74-1630.

United States Court of Appeals,
Sixth Circuit.

Aug. 25, 1975.

Avon N. Williams, Jr., Julian W. Blackshear, Jr., Russell C. B. Ennix, Jimmie Baxter, Nashville, Tenn., Jack Greenberg, James M. Nabrit, III, Morris Baller, Phillip Brookins, New York City, for plaintiff-appellant.

David M. Keeble, Harlan Dodson, III, M. Norris Jenkins, Nashville, Tenn., Robert G. Wilson, Denver, Colo., for defendant-appellee.

Before CELEBREZZE, McCREE, and LIVELY, Circuit Judges.

McCREE, Circuit, Judge.

This appeal from the dismissal, after trial without a jury, of a complaint alleging racial discrimination in employment practices presents two issues for our consideration:[1] (1) whether the district court erred in determining that appellant Rice's discharge from employment was based on cause and not on his race, which is Negro; and (2) whether the district court employed an erroneous legal standard in its determination that appellee, Gates Rubber Company, did not, after the effective date of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., discriminate against Negroes in job placement, transfer, promotion, demotion and discharge.[2] We affirm that part of the district court's judgment dismissing appellant's complaint in his own behalf but hold that it did not apply the correct legal standard in arriving at its determination in the class aspect of the action that appellee did not discriminate on the basis of race in its employment practices.

Robert H. Rice, the appellant, was employed in a classification described as a banner operator by the Gates Rubber Company (Gates) on November 9, 1967, and was discharged on December 15, 1967. Shortly after his discharge, Rice filed a complaint with the Equal Employment Opportunity Commission and received a "right to sue" letter on September 17, 1971. He then filed a timely complaint in federal district court on October 15, 1971, alleging that he had been discharged by Gates because of his race and that the company discriminated against Negroes as a class in job placement, promotion, transfer, demotion and discharge. He sought back pay for himself and equitable and other appropriate relief on behalf of the class. 42 U.S.C. § 2000e–5(g), (k).

In support of his personal claim Rice testified that he had been given inadequate training for the job of banner operator and that he had been accorded a shorter probationary period in which to qualify for that classification than that granted to white employees. The collective bargaining agreement in effect at the time of Rice's employment between the Gates Rubber Company and the United Rubber, Cork, Linoleum, and Plastic Workers of America, permitted Gates to hire an employee for a sixty day probationary period before it was required to decide whether the employee was satisfactory. If, at the end of the sixty day period, the employee had qualified, he was made a permanent employee entitled to all the protections of the collective bargaining agreement. Rice, who was discharged before the expiration of the probationary period for the stated reasons that he could not make production and that there was little hope he would be able to do so at the end of sixty days, complained that other employees, who were white and who had also been unable to meet production quotas, had been afforded the full sixty day period in which to do so.

The district court, which refused to credit Rice's testimony in several respects, found that most employees met the production quota after three weeks of training; that Rice's trainers had been capable and experienced persons; that Rice had not complained of inadequate supervision until the day of his discharge; and that the two white em-

---

1. We do not consider the dismissal of the individual complaint of plaintiff-intervenor Carlton M. Glenn who alleged that his discharge was based on his race because he did not pursue an appeal to this court of the district court's order.

2. In a memoriam opinion accompanying its order issued on May 25, 1972, the district court determined that "[p]laintiff may only represent black applicants and prospective black applicants who are subjected to discriminatory practices relating to promotions, transfers, and job placements subsequent to their initial hiring, and those employees who are discharged because of their race." Neither party challenges the appropriateness of this class.

ployees who had taken longer than five weeks to qualify had either been assigned to work with an equally inexperienced employee on the machines, or had been assigned to work on a more difficult "one-man" machine. It concluded that Rice had been discharged not because of his race but because he was unable to perform satisfactorily. In making this judgment the district court also considered Rice's poor employment record both before and after his brief association with Gates.

■ After a careful examination of the record, we conclude that the district court's determination that Rice was fired for failing to meet production quotas, and not because of his race, has ample evidentiary support. The record reflects that Gates Rubber Company had adopted a rule that in order to qualify as a banner operator, a relatively simple task, an employee's production had to be "a hundred percent twenty-four out of forty hours in a given week." Rice's production was 38 percent the first week, 52 percent the second, 54 percent the third, 59 percent the fourth and 74 percent the fifth week or an average of 55.4 percent during the five week period. In contrast, eleven other banner operators had achieved production rates of over one hundred percent during their probationary periods and had achieved an average of 92.45 percent during that time. Accordingly, we hold that the district court did not err in dismissing Rice's personal claim.

In support of the class action aspect of the complaint that Gates discriminated against Negroes in job placement, trans-fer, promotion, demotion and discharge, Rice, relying on the oft-quoted maxim that "figures speak, and when they do, Courts listen," introduced primarily statistical evidence. *Brooks v. Beto*, 366 F.2d 1, 9 (5th Cir. 1966), *cert. denied*, 386 U.S. 975, 87 S.Ct. 1169, 18 L.Ed.2d 135 (1967). This evidence showed that Gates Rubber Company which had a manufacturing plant in Nashville, Tennessee, a city having an employable population that is 16 percent Negro, did not hire a single Negro until 1966. In 1966, however, Negroes filled 13 of the 467 positions available; in 1967, 11 out of 429; in 1968, 27 out of 552; in 1969, 36 out of 575; in 1970, 30 out of 55; and in 1971, 36 out of 612. Moreover, until September 1968, Negroes were always placed in the lowest paying job classification within one of the several seniority departments. From 1968 until Rice filed his complaint in this action in the district court, all Negro employees but one occupied positions in the lowest job classification within a single department.

In 1971 the Gates Rubber Company instituted an affirmative action program. The parties agree that its implementation has been successful particularly during the years 1972 and 1973 after Rice had filed his complaint in federal district court.

■■ The district court in arriving at its determination that Gates did not discriminate against Negroes as a class in job placement, promotion, transfer, demotion and discharge focused on the company's ultimate performance at the end of the period from 1967 through 1973.[3] On appeal, Gates urges us to re-

**3.** In his complaint Rice also charged that the departmental seniority system employed by Gates, although facially neutral, had the effect of perpetuating past discrimination against Negro employees. Transfer within Gates Rubber Company's Nashville plant is accomplished by three different procedures. First, Gates reserves the right to transfer employees by promotion or demotion. Second, an employee may "bid" for a job in his own department, and the vacancy is filled on the basis of seniority. Third, if an employee desires to transfer to a position in one of the other seniority departments, he applies for a "self-requested" transfer. Because of Gates' departmental seniority system, a person hired to work in the department in which a vacancy occurs and who has only one day of seniority is able to "outbid" an employee from another department who has ten years of seniority. Should

strict our examination of the charge of class-based discrimination in a similar fashion. This standard is, however, erroneous. As the court stated in *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421, 425 (8th Cir. 1970),

> [t]he crucial issue in a lawsuit of this kind is whether the plaintiff establishes . . . bias at the time of his . . . employment and subsequent complaint to the EEOC, not the employment practices utilized two years later.

*See also United States v. International Brotherhood of Electrical Workers, Local No. 38*, 428 F.2d 144, 149–51 (6th Cir.), *cert. denied*, 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970). The record before us discloses that the employment practices of Gates were radically different at the time when Rice was an employee from those at the time when this case went to trial. Accordingly, the case must be remanded to permit the district court to determine whether Rice established a prima facie case that at the time he was employed by Gates, the company discriminated against Negroes as a class in job placement, promotion, transfer, demotion and discharge. If the court should determine that Rice did establish a prima facie case, it should consider whether Gates rebutted it. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The belated actions of Gates Rubber Company, although commendable, are not sufficient to rebut a prima facie case of discrimination at an earlier time, if one should be established. Its affirmative action program may be relevant, however, in formulating appropriate relief.

■ We affirm that portion of the judgment of the district court dismissing the personal complaint of Rice but reverse that part dismissing the class action and remand the case for further proceedings with respect to it. *See Parham v. Southwestern Bell Telephone Co., supra, United States v. International Brotherhood of Electrical Workers, Local No. 38, supra.* Should the court find, employing the correct legal standard, that Gates Rubber Company did discriminate against Negroes before 1970, it may consider the affirmative action program instituted by Gates in 1971 in devising its remedy.[4] And, even though Rice has failed to prove his individual claim, if the court determines that his class action is well-taken, it may, in its discretion, award an attorney's fee. 42 U.S.C. § 2000e–5(k). *See Newman v. Piggie Park Enterprises,*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), *Parham v. Southwestern Bell Telephone Co., supra.*

Affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.

---

the district court, on remand, determine that Gates was guilty of class-based discrimination, it may wish to consider the effect of the facially neutral departmental seniority system. *See, e. g., Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211 (5th Cir. 1974), *Head v. Timken Roller Bearing Co.*, 486 F.2d 870 (6th Cir. 1973).

4. After trial but while the case was pending before the district court, Gates Rubber Company sold its Nashville manufacturing plant. Because of the court's determination that Gates had not discriminated against Negroes, it did not consider what effect this sale should have on the formulation of appropriate relief on behalf of appellant. Should the district court on remand make the contrary determination, it should consider the effect of the sale in formulating appropriate relief.