### KEWEENAW BAY INDIAN COMMUNITY, Plaintiff–Appellant,

v.

STATE of Michigan, the Michigan Natural Resources Commission; Department of Natural Resources; Thomas Newago; Alan Newago; Mike Peterson; Cecil Peterson; Gilmore Peterson; Duane Peterson; Earl Livingston; Jack Pero; Director, Michigan Department of Natural Resources, Defendants–Appellees,

Donald Moore, Sr., Chairperson of the Bad River Band of Lake Superior Chippewa Indians; Patricia DePerry, Chairperson of the Red Cliff Band of Lake Superior Chippewa Indians, Defendants.

No. 93–1118.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 12, 1993.

Decided Dec. 14, 1993.

1342

Joseph P. O'Leary (argued and briefed), Baraga, MI, for plaintiff-appellant.

Thomas J. Emery, Kevin T. Smith, Asst. Atty. Gen., Office of the Atty. Gen., Natural Resources Div., Lansing, MI, for State of Mich., Natural Resources Com'n, Department of Natural Resources and Director, Michigan Dept. of Natural Resources.

James M. Jannetta (argued and briefed), Sault Ste. Marie, MI, for Thomas Newago, Alan Newago and Jack Pero.

Frances L. Wells (briefed), Missoula, MT, for Mike Peterson, Cecil Peterson, Gilmore Peterson, Duane Peterson and Earl Livingston.

Before: MARTIN and SUHRHEINRICH, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Keweenaw Bay Indian Community appeals the district court's dismissal of its complaint for failure to join an indispensable party in this action to enforce fishing rights pursuant to an 1842 treaty. 152 F.R.D. 562. We affirm.

I

Keweenaw Bay Indian Community, a band of Chippewa Indians in Michigan, initiated this action "to protect and preserve the lake trout fishery resource in the Michigan waters of Lake Superior within the territory ceded to the Lake Superior Chippewa in the Treaty of 1842, in order to insure fulfillment of the Tribe's treaty-reserved fishing rights." Complaint at ¶ 1. The Community named three groups as defendants; contending that they contributed to the decline of the lake trout population by overharvesting, overstocking other competitive salmonid species, and failing to regulate lake trout resources properly. The named defendants are: the State of Michigan, the Michigan Natural Resources Commission, the Department of Natural Resources and its director; five individual members of the Red Cliff Band of Chip-

pewa Indians; and three individual members of the Bad River Band of Chippewa Indians.

The Community, the Bad River Band, and the Red Cliff Band are all successors in interest to bands of Lake Superior Chippewa who signed the United States Treaty with the Chippewa of 1842. In dividing the annuity payments due the various signatories to the treaty, Article V states that "the whole country between Lake Superior and the Mississippi, has always been understood as belonging *in common* to the Chippewas." (Emphasis added). In its complaint, the Community alleges that, the language of the treaty notwithstanding, the Chippewas have never regarded natural resources, including fishing rights, to be shared in common, even among different bands of its tribe. Accordingly, the Community contends that it has the exclusive right to certain "home waters" around its reservation at Lake Superior in Michigan, and that it must consent to any fishing by others therein.

The Community was approached by the Red Cliff and Bad River bands many times between 1973 and 1983 for permission to fish in the Michigan waters of Lake Superior. The Community consistently denied such permission and the bands respected these denials. In 1985, however, the Community agreed to allow fishermen from the two bands to fish in the waters, provided that these individuals complied with the Community's regulations and fished only west of the Keweenaw Peninsula. The fishermen refused to abide by the regulations, and in 1986, after an allegedly coercive and unfair meeting, the three bands signed an agreement allowing Bad River and Red Cliff fishermen into the Community's alleged "home waters" unrestricted by Community regulations. The agreement was renewed once and remained effective until 1988. In 1988, the Community elected a new tribal chairperson, who was allegedly coerced into signing a commercial fishing agreement with the bands, which allowed them to fish in the Community's "home waters" until 1990. In 1990, the Community refused to sign another agreement and withdrew permission for the other two bands to fish in the Michigan waters. The Bad River and Red Cliff bands

subsequently signed a bilateral agreement authorizing themselves to fish in the Michigan waters.

The Community then filed a three-count complaint, which names individual members of the two bands as defendants. The Community, however, did not bring suit against the Red Cliff or Bad River bands themselves. Count I of the complaint requests that the court recognize the existence of the Community's treaty-reserved right to fish for commercial and subsistence purposes in the disputed waters, and declare that the State defendants have no authority to regulate these activities. Count II requests that the court sanction the Community's Fisheries Management Plan and enjoin policies and/or fishing activities of the defendants and their licensees that are incompatible with the Community's treaty fishing rights and management plan. Count III requests that the court declare that the Community is entitled to a designated share of the sustainable yields of the fishery resource in the disputed waters. In addition to these counts, the Community makes various specific requests for relief. The Community then sought to file an amended complaint, in which it requested that the court protect and preserve the Community's right to its "home waters," interpret the 1842 treaty so as to determine the extent of the Community's fishing rights, and enjoin the State from imposing regulations conflicting with the rights provided for by the treaty.

The State filed an answer, asserting a counterclaim against the Community and the Red Cliff and Bad River bands themselves. The counterclaim sought a declaration of the respective fishing rights of all of the bands, and a declaration that the bands' aggregate interest did not exceed 50% of the total lake trout harvest. The individual Red Cliff and Bad River fishermen filed a motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19, for failure to join indispensable parties, namely the Red Cliff and Bad River bands. The district court's opinion focused exclusively on the Rule 19 issue.

First, the district court found that the Red Cliff and Bad River bands were necessary

parties under either prong of Rule 19(a). The court noted that under Rule 19(a)(1), any relief granted to the Community or Michigan in this action would be hollow, as the absent bands also had an interest in fishing rights under the treaty and could continue to fish in the Michigan waters because the judgment in this dispute would have no effect on them. The court also found the absent bands to be necessary parties under Rule 19(a)(2). The court first determined that the bands had a protected interest in the fishing resource, as a result of the "in common" language of Article V of the treaty. This legally protected interest, the court reasoned, would be impaired or impeded by a judgment in this case. Moreover, the court noted that disposition of the case without the absent bands would leave the State defendants subject to the risk of incurring multiple or inconsistent obligations, as any judgment obtained by the Community would not bind the other bands, and would result in the State facing inconsistent regulatory obligations, as well as future lawsuits.

Having determined that the Red Cliff and Bad River bands were necessary parties, the court then considered whether they were also indispensable parties under Rule 19(b). First, the court noted that the bands could not be joined in the litigation because they possess tribal sovereign immunity, which they had not waived. Weighing the four factors enumerated in Rule 19(b), the court then concluded that the bands were in fact indispensable. The court further denied the Community's motion to file an amended complaint, on the ground that the allegations in the new complaint continued to implicate the rights of the Red Cliff and Bad River bands, and thus the new complaint suffered from the same lack of indispensable parties as the original complaint. The Community was given thirty days in which to file a complaint as to the State defendants only, which it failed to do. Accordingly, the district court dismissed the case. The Community subsequently filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), which was denied. The Community now appeals.

**II**

Keweenaw Bay Indian Community alleges that the district court erred in: (1) concluding that the absent bands were indispensable parties; (2) failing to consider claims set forth in the Community's proposed amended complaint; and (3) failing to consider the Community's request for a preliminary injunction. We address each of these alleged errors in turn.

■■■ This Court has previously stated that the resolution of the question of joinder under Rule 19, and thus of dismissal for failure to join an indispensable party under Rule 12(b)(7), involves a three-step process. *Local 670 v. International Union, United Rubber, Cork, Linoleum and Plastic Workers of America*, 822 F.2d 613, 618 (6th Cir. 1987), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988). The court must first determine whether a person is necessary to the action and should be joined if possible. Rule 19(a) describes this initial analysis as follows:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave the parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

If the court finds that the absent person or entity falls within either one of these provisions, the party is thus one to be joined if feasible. The court must then consider steps two and three: the issues of personal jurisdiction and indispensability. As this Court recognizes:

If personal jurisdiction is present, the party *shall* be joined; however, in the absence of personal jurisdiction (or if venue as to

the joined party is improper), the party cannot properly be brought before the court. If such is the case, the court proceeds to the third step, which involves an analysis of the factors set forth in Rule 19(b) to determine whether the court may proceed without the absent party or, to the contrary, must dismiss the case due to the indispensability of that party. The four factors set forth in Rule 19(b) include:

first, to what extent a judgment rendered in the person's absence might be prejudicial to [the person] or to those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The rule is not to be applied in a rigid manner but should instead be governed by the practicalities of the individual case. This court has noted that "[i]deally all [the] parties would be before the court. Yet Rule 19 calls for a pragmatic approach; simply because some forms of relief might not be available due to the absence of certain parties, the entire suit should not be dismissed if meaningful relief can still be accorded."

*Id.* at 618 (quoting *Smith v. United Bhd. of Carpenters and Joiners of America,* 685 F.2d 164, 166 (6th Cir.1982)) (other citations omitted).

■ Before embarking on the substantive analysis outlined above, this Court in *Local 670* paused to consider the appropriate standard of review. We noted first that although we had previously adopted an implicit abuse of discretion standard for Rule 19 cases, "a determination that a party is 'indispensable,' thereby requiring dismissal of an action, represents a legal conclusion reached after balancing the prescribed factors under Rule 19." *Id.* at 618–19. Accordingly, we concluded that this Court properly reviews a district court's indispensability decision, "in th[e] sense" that such a decision is based on the

application of a legal balancing test, *de novo.* *Id.* at 619. Our careful and limiting construction in articulating this standard is self-evident. Whereas we made clear that the distinct indispensability analysis under Rule 19(b) is inherently a legal question, the preliminary determination as to whether a party is necessary to the action, under Rule 19(a), is based solely on a district court's factual findings. We thus make explicit today what we have already implied in *Local 670:* we review a Rule 19(a) finding that a party is necessary to an action under an abuse of discretion standard, while we review a Rule 19(b) determination that a party is indispensable to an action *de novo.* See *Fleischut v. Nixon Detroit Diesel, Inc.,* 859 F.2d 26, 30 (6th Cir.1988) (stating that "a district court abuses its discretion only when it *relies upon clearly erroneous findings of fact* or when it improperly applies the law or uses an erroneous legal standard" (emphasis added)); *Local 670,* 822 F.2d at 619.

■ With the proper approach and standards of review in mind, we turn to the Community's allegation that the district court erred in finding the Red Cliff and Bad River bands to be indispensable parties to this action. First, we hold that the court did not rely upon clearly erroneous findings of fact, and thus did not abuse its discretion, in determining that the absent bands were necessary parties under Rule 19(a). As a preliminary matter, the Community takes issue with the court's determination under Rule 19(a)(1) that any relief granted in this case would be hollow in part because it could be upset in subsequent litigation brought by the absent bands. The Community cites *Sales v. Marshall,* 873 F.2d 115, 121 (6th Cir.1989), for the proposition that Rule 19(a)(1) was not meant to encompass merely speculative litigation between a party to the litigation and an absent person. The Community's reliance on *Sales,* however, is misplaced. That case involved a determination by the court, in a civil rights suit against a county and officials of the county jail, that a state correctional facility in which the plaintiff was imprisoned was not a party in whose "absence complete relief cannot be accorded." *Id.* at 117, 121. Here, the relationship between the absen-

tees, the Red Cliff and Bad River bands, and those already parties to the action is qualitatively different than in *Sales*, because the two absent bands are signatories to the very treaty at issue in the action. The likelihood that they would seek legal recourse in the event that the judgment deprived them of fishing rights to which they believe they are entitled can hardly be characterized as speculative.

■ The Community also challenges the district court's alternative determination that the absent bands are necessary parties under Rule 19(a)(2). Specifically, the Community asserts that the court erred in not pursuing a factual inquiry into whether the absent parties possessed the requisite legally protected interest to fall within the Rule 19(a)(2) definition of a necessary party. We disagree.

Maintaining that the existence of, or at least the extent of, the absent bands' interest in the disputed waters depends upon an interpretation of the 1842 treaty, the Community asserts that an initial factual inquiry was required. The Ninth Circuit has recently considered and rejected a similar argument. *See Shermoen v. United States*, 982 F.2d 1312 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2993, 125 L.Ed.2d 688 (1993). In *Shermoen*, the absent tribes' interest depended upon the legality of a settlement act. In rejecting the appellants' argument that a determination as to whether the absent tribes were necessary parties to the action required a preliminary factual inquiry into the legality of the act, the *Shermoen* court stated:

> The appellants' position is not without some logical appeal. The Act is either constitutional or unconstitutional: if the latter, then the absent tribes have no "legally protected interest in the outcome of the action"; if the former, then the appellants will not prevail and thus the disposition of the action will not impair the absent tribes' interests.
>
> The language of Rule 19, however, forecloses such an analysis. Under that rule, the finding that a party is necessary to the action is predicated only on that party having a *claim* to an interest ... Just adjudication of claims requires that courts

protect a party's right to be heard and to participate in adjudication of a claimed interest, even if the dispute is ultimately resolved to the detriment of the party.

> Thus, the joinder rule is to be applied so as to preserve the right of parties to "make known their interests and legal theories." In this case, the absent tribes have an interest in preserving their own sovereign immunity, with its concomitant "right not to have [their] legal duties judicially determined without consent." The district court was therefore correct in concluding that the tribes were necessary parties.
>
> ■ We do not hold, of course, that a district court would be required to find a party necessary based on patently frivolous claims made by that party.

*Id.* at 1317–18 (citations omitted). As the Red Cliff and Bad River bands' claims to fishing rights created by the direct language of the treaty at issue are not patently frivolous, the district court's finding that the absent bands had a "legally protected interest in the suit" was not clearly erroneous. We also agree with the court's conclusion that the absent bands' interests would be impaired or impeded by a judgment in this case, within the meaning of Rule 19(a)(2)(i), and that disposition of the case without the bands would leave the State defendants subject to a substantial risk of incurring multiple or otherwise inconsistent obligations, within the meaning of Rule 19(a)(2)(ii).

Pursuant to the second step in our three-step Rule 19 analysis, we consider next whether the absent bands, as necessary parties, can be made parties to this action. The Community concedes that because of tribal sovereign immunity, the bands cannot be joined. *See Oklahoma Tax Com. v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991).

■ Faced, therefore, with necessary parties that cannot be made parties to the action, we turn to Rule 19(b) and address whether these parties are indispensable, such that "in equity and good conscience" the action should be dismissed. Although our review is *de novo*, in this case we find little

indeed to add to the district court's analysis of the indispensability issue. We note only that in regard to the fourth factor enumerated in 19(b)—whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder—this Court has previously identified a further federal remedy, other than congressional action, available to the Community. Namely, pursuant to 25 C.F.R. § 249.2(a), an Indian tribe may petition the Secretary of the Interior to exercise his authority to promulgate federal regulations governing a fishing treaty. *See United States v. Michigan,* 623 F.2d 448, 449–50 (6th Cir.1980). With this additional point in mind, we adopt the district court's well-reasoned analysis and find that the Red Cliff and Bad River bands are indispensable parties in whose absence the action should be dismissed.

■ The Community's second allegation is that the district court erred in failing to consider the claims set forth in the Community's proposed amended complaint. We disagree. First, we find that the Community could not have amended its complaint as a matter of right. Federal Rule of Civil Procedure 15(a) states, in pertinent part, that a party may amend its complaint "as a matter of course at any time before a responsive pleading is served." Here, the State defendants filed an answer to the complaint in April 1991. The Community did not file the motion to amend its complaint until September 1991. Under these circumstances, the responsive pleading by the State defendants cut off the Community's right to amend as a matter of course. *See Textor v. Bd. of Regents of N. Ill. Univ.,* 711 F.2d 1387, 1391 n. 1 (7th Cir.1983); *Wood v. Santa Barbara Chamber of Commerce,* 705 F.2d 1515, 1521 (9th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984).

■ The appropriate inquiry, therefore, is whether the court erred in not granting the Community leave to amend its complaint. Pursuant to Rule 15(a), "leave shall be freely given when justice so requires." Here, the court denied leave to amend based on a determination that the amended complaint suffered from the same infirmities as the original complaint and thus would not

withstand a motion to dismiss based on Rules 12(b)(7) and 19. We review such a decision *de novo.* *See Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir.1986). As did the district court, we find no material difference between the two complaints, and thus no need to undertake any further analysis beyond our evaluation of the Rule 19 issue raised by the original complaint. Accordingly, we hold that because the district court did not err in dismissing the original complaint, it necessarily did not err in failing to consider the claims set forth in the Community's proposed amended complaint.

■ Finally, the Community contends that the district court erred in failing to consider the Community's request for a preliminary injunction. We note first that the court did not err in considering the Rule 19 issue before addressing the Community's motion for a preliminary injunction. *See Tankersley v. Albright,* 514 F.2d 956, 966 (7th Cir.1975) (court must determine the indispensability of absent persons before considering the merits of a case). The court's subsequent dismissal of the action for failure to join an indispensable party rendered the injunction request moot. Accordingly, the Community's argument, as framed, does not present an appealable issue. To be thorough, we will nonetheless address whether the court erred in *denying* the Community's motion. Whether to grant a preliminary injunction requires consideration of four factors: "(1) the likelihood of success on the merits; (2) whether irreparable harm will result without the injunction; (3) the probability of substantial harm to others; (4) whether the public interest is advanced by the injunction." *International Resources v. New York Life Ins.,* 950 F.2d 294, 302 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992). We review this decision under an abuse of discretion standard. *Id.* Here, the Community demonstrated little likelihood of success on the merits and denying the injunction, even in the face of possible harm to the fishery resource in the disputed waters, served the fundamental public interest goal of respecting tribal sovereign immunity. *See Wichita and Affiliated Tribes of Oklahoma v. Hodel,*

788 F.2d 765, 777 (D.C.Cir.1986) (noting the social importance of shielding Indian tribes from suit). We thus find no abuse of discretion in the court's denial of the Community's motion for a preliminary injunction.

For the foregoing reasons, the judgment of the district court is affirmed.