**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**PETERSON, HOWELL & HEATHER, INC. and PHH Group, Inc.**

No. B–85–4608.

United States District Court, D. Maryland.

Jan. 4, 1989.

Gerald S. Kiel, Donald R. Stacy, Marcia E. Bove, Baltimore, Md., for plaintiff.

Walter B. Connolly, Jr., Gillian Steinhauer, Sally L. Geib, Alison B. Marshall, Detroit, Mich., Robert B. Barnhouse, Baltimore, Md., John T. Connor, Jr., Hunt Valley, Md., for defendants.

WALTER E. BLACK, Jr., District Judge.

The Equal Employment Opportunity Commission (EEOC) brought this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, against Peterson, Howell & Heather, Inc. ("PHH, Inc.") and PHH Group, Inc.[1] to remedy alleged discriminatory employment practices at the defendants' Baltimore County facilities in Maryland. In its complaint, the EEOC alleges that defendants discriminated against blacks as a class in recruitment and hiring and against females as a class in recruitment, hiring, promotion, and wages.[2] The EEOC seeks permanent injunctive relief, affirmative relief to eradicate the effects of unlawful employment practices, and backpay to make whole affected class members.

The defendants have filed two motions now pending before the Court: (1) a motion to dismiss and/or for summary judgment on the basis of prior Maryland Commission on Human Relations (MCHR) proceedings and settlement (Paper 15); and (2) a motion to dismiss and/or for summary judgment (Paper 16).

## I

*Motion to Dismiss on the Basis of Prior MCHR Proceedings and Settlement*

On September 20, 1977, the MCHR forwarded a charge dated February 7, 1977, to PHH, Inc. alleging "discriminatory practices on the basis of race and sex with respect to recruiting and hiring policies." On April 2, 1979, PHH Group, Inc. and the MCHR entered into a "Pre–Determination Settlement Agreement" ("the settlement agreement"). The settlement agreement provided that, if the defendants complied with the nondiscrimination and affirmative action provisions of the agreement, no further action would be brought or recommended against them under Maryland state law or Title VII. The MCHR terminated its enforcement activities and proceedings as to PHH Group, Inc. after September 29, 1980, when Commissioner Daniel Leach of the EEOC filed a charge with the EEOC against the defendants alleging violations of Title VII.[3] This charge is the genesis of the present litigation, which covers alleged discriminatory employment practices spanning from 1978 to the present.[4]

---

1. PHH Group, Inc. is a holding company which until 1979 and 1980 existed within the structure of the operating company, PHH, Inc. In 1979 and 1980 the PHH Group, Inc. was separated from PHH, Inc. and established as a corporate holding company.

2. The EEOC also alleges that females were discriminated against in assignment and classification, but the parties have stipulated that the claim pertains only to the effect that discriminatory assignment and classification may have on wage disparities (*See* Transcript of April 11, 1986, hearing, pp. 5–6).

3. Pursuant to 42 U.S.C. § 2000e–5(b) (1976), a charge of discrimination may be filed by an aggrieved individual or a member of the Equal Employment Opportunity Commission.

4. In its complaint the EEOC alleges that defendants have engaged in discriminatory practices since 1972. The EEOC has proffered to the Court, however, that it intends to limit the classes seeking relief to those discriminated against since 1978. (*See* Transcript of January 29, 1988, hearing). This is in conformity with 42 U.S.C. § 2000e–5(g) (1976), which limits back pay to the two-year period preceding the filing of a charge with the EEOC.

When the Commissioner filed his charge, there existed a "Worksharing Agreement" between the EEOC Baltimore District Office and the MCHR. The purpose of the worksharing agreement was to institute procedures that would facilitate the efficient processing of discrimination charges and would promote consistency in the efforts of the Baltimore EEOC office and the MCHR.

In their motion to dismiss,[5] the defendants contend that the MCHR investigation and compliance review conducted pursuant to terms of the settlement agreement preclude EEOC review of those employment practices which occurred between October 1, 1977, and October 1, 1980, the time period covered by the MCHR investigation and enforcement activities. Defendants maintain that under the terms of the Worksharing Agreement, the MCHR had exclusive jurisdiction over the employment practices investigated and settled by the MCHR and that the current action by the EEOC is barred by administrative res judicata or collateral estoppel, at least with respect to the period of October 1, 1977, to October 1, 1980.[6]

(A)

THE WORKSHARING AGREEMENT

■ The express purpose of worksharing agreements between the EEOC and state anti-discrimination agencies is to eliminate duplication of effort. *See* 29 C.F.R. § 1601.13(c) The worksharing agreement between the MCHR and the EEOC designates different categories of charges as the primary responsibility of each agency. Under the provisions of the agreement, the EEOC is given primary responsibility for processing all "[c]harges filed by the EEOC or its commissioners." (Worksharing Agreement, section 4c.1). Similarly, the MCHR is given primary responsibility for processing all "[c]harges filed by the [MCHR] or its Commissioners." (Worksharing Agreement, section 4b.3).

The defendants contend that the MCHR Commissioner's charge was first in time and vested exclusive jurisdiction with the MCHR over those issues and time periods covered by the MCHR charge. Any other interpretation, they argue, would frustrate the expeditious resolution of charges because employers will not enter into a settlement with one anti-discrimination agency if it remains subject to duplicative litigation by the other agency.

■ Neither the statutory provisions of Title VII nor the worksharing agreement prohibits the EEOC from processing a charge filed by one of its own Commissioners where the MCHR has already investigated and settled a charge filed by a MCHR Commissioner. As to EEOC Commissioner-instituted charges, Title VII requires only that the EEOC notify the appropriate state agency and, upon the state agency's request, that the state agency be afforded reasonable time to remedy the alleged discriminatory practice. 42 U.S.C. § 2000e–5(d) (1976).[7] Moreover, the fact

5. Because the Court has considered the exhibits submitted with the briefs, this motion has been treated as a motion for summary judgment. Fed.R.Civ.P. 12(b).

6. In its response to the defendants' motion, the EEOC has moved the Court to strike the motion (Paper 23). The EEOC's motion to strike is premised on the defendants' failure to plead affirmative defenses, such as estoppel or res judicata, in their original answer in conformity with Rule 8(c) of the Federal Rules of Civil Procedure. Rule 8(c) of the Federal Rules of Civil Procedure provides that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively ... estoppel, ... res judicata, ... and any other matter constituting an avoidance or affirmative defense."

Absent prejudice to the opposing party, affirmative defenses may be raised in a motion for summary judgment although they were not specifically pleaded as affirmative defenses. *Healy Tibbitts Construction Co. v. Insurance Co. of North America,* 679 F.2d 803, 804 (9th Cir. 1982); *Bartlett v. Fruehauf Corp.,* 642 F.Supp. 954, 958 (W.D.N.C.1986). Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave [to amend] shall be freely given." Accordingly, on November 6, 1987, the Court granted the defendants' motion for leave to file an amended answer (Paper 47). Because the EEOC has not demonstrated any prejudice by defendants' failure to assert their affirmative defenses until their amended answer, the EEOC's motion to strike will be denied.

7. The EEOC complied with this provision on October 10, 1980, when it submitted to the MCHR a notice that a charge was filed by an EEOC Commissioner.

that the worksharing agreement is intended to minimize duplication of effort poses no legal bar to dual investigations by federal and state anti-discrimination agencies who are charged with enforcing different laws. The focus of the worksharing agreement is to minimize duplication of effort in processing charges filed by aggrieved individuals. A charge filed by an EEOC or MCHR Commissioner is still the primary responsibility of each agency.[8]

### (B)
### RES JUDICATA AND COLLATERAL ESTOPPEL

■ The defendants also argue that the pre-determination settlement agreement they entered into with the MCHR should be given preclusive effect with respect to the EEOC. Defendants assert that the settlement agreement is analogous to a consent decree or a finding by an administrative agency acting in a judicial capacity, which are both given res judicata effect. *See Steyer v. Westvaco Corp.*, 450 F.Supp. 384, 397 (D.Md.1978) (consent judgment); *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966) ("[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.")

The Court finds little merit in either analogy. First and foremost, the EEOC is not a party to the settlement agreement and is not bound by its provisions. The settlement agreement provides in relevant part that:

> [t]he Maryland Commission on Human Relations agrees that conditionally upon compliance by the Respondent with the terms of this Agreement, no further action will be brought (by civil action or

otherwise) on this case or any other case in process or recommended against the Respondent nor will it issue or recommend issuance of any advisory notices or reports recommending proceedings against Respondent under Article 49B of the Annotated Code of Maryland, or Title VII of the Civil Rights Act of 1964, as amended.

The MCHR cannot speak for the EEOC and bind it to an agreement unless there is privity between the two agencies. Defendants provide no authority for their novel contention that the MCHR and the EEOC are in privity with each other. The worksharing agreement does not purport to create such an identity of interest nor does the law provide for it. *See Turley v. Wyrick*, 554 F.2d 840, 842 (8th Cir.1977), *cert. denied*, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed. 2d 780 (1978) ("collateral estoppel doctrine does not apply when different sovereigns and, thus, different parties are involved in the litigation").

■ Second, Title VII claims are not barred by unreviewed state agency determinations. *University of Tennessee v. Elliott*, 478 U.S. 788, 796, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986). Defendants liken the settlement agreement to a consent decree, but the settlement agreement was not passed upon by any court. The settlement agreement was merely an extrajudicial agreement between a state agency and a private party. In *University of Tennessee v. Elliott*, the United States Supreme Court stated that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." 478 U.S. at 796, 106 S.Ct. at 3225. If unreviewed state administrative determinations have no preclusive effect on Title VII claims, surely unreviewed agreements between state administrative agencies and private parties have no preclusive effect either.

---

**8.** Defendants contend that Executive Order 12291 also requires the EEOC to minimize the duplication of resources and that overlapping investigations by the EEOC and MCHR contravenes the Executive Order.

Executive Order 12291 is directed at the minimization of conflict and duplication resulting from regulations promulgated by various federal agencies. It is of no relevance here, where state and federal agencies have conducted investigations of discriminatory practices under their respective statutory mandates.

Defendants' reliance on *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), is misplaced. In *Utah Construction*, a case involving the federal administrative channels to resolve government contract disputes, the Supreme Court held that the fact finding of a state administrative agency was binding in a subsequent action between the same parties. In dicta, the Court stated that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Id.* at 422, 86 S.Ct. at 1560. The dicta of *Utah Construction*, however, has no application to the Title VII statutory context, especially in light of the clear language of *Elliott* that unreviewed state administrative proceedings have no preclusive effect on Title VII claims. *See Reedy v. State of Florida Department of Education*, 605 F.Supp. 172, 174 (N.D.Fla. 1985) (*Utah Construction* has no application to Title VII in that Congress intended that employment discrimination claims could be litigated in several forums).

### (C)
### THE FOURTH AMENDMENT

■ Defendants argue that the EEOC's administrative investigation of the Commissioner's charge violates the fourth amendment because the EEOC lacks "neutral criteria" to guide it in determining which employers to investigate, and the EEOC failed to consult the MCHR regarding the MCHR investigation before filing its own charge.[9]

The fourth amendment reasonableness requirement has no application where there has been no "search" or "seizure." The investigation of an underlying EEOC charge is not a search because it is not an infringement on "an expectation of privacy that society is prepared to consider reason-

able." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). Thus, the EEOC need not follow an "administrative plan containing specific neutral criteria," (*Marshall v. Barlow's, Inc.*, 436 U.S. 307, 323, 98 S.Ct. 1816, 1826, 56 L.Ed.2d 305 (1978)), before it commences an investigation. Furthermore, the fourth amendment has nothing to say about how state and federal agencies must cooperate on investigations of a common target. Whether any of the EEOC's specific requests for information violated the United States Constitution is an issue best addressed in response to that particular request.

Accordingly, for all of the foregoing reasons, the defendants' motion on the basis of prior MCHR proceedings and settlement will be denied.

### II

### *Motion to Dismiss and/or Motion For Summary Judgment*

Also pending before the Court is the defendants' motion to dismiss and/or for summary judgment.[10] Defendants urge dismissal of all or part of this lawsuit on the following grounds: (1) that the EEOC's delay in bringing this action was unreasonable and prejudiced the defendants, and that the EEOC's claims are therefore barred by the doctrine of laches; (2) that the EEOC's claims must be limited to the time period of April 2, 1980, to the present under the 180–day statute of limitations in section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e); (3) that the affirmative action programs initiated by the defendants render the action moot and preclude the granting of injunctive relief; and (4) that the EEOC cannot establish a *prima facie* case of discrimination for a class of de-

---

**9.** The fourth amendment provides that:

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**10.** Because the Court has considered the exhibits submitted with the briefs, this motion has been treated as a motion for summary judgment. Fed.R.Civ.P. 12(b).

terred applicants.[11]

## (A)
## LACHES

■ Laches is an equitable doctrine which alleviates the unfairness to a defendant when a plaintiff unreasonably delays in filing suit. It is well-established that laches may be raised as a defense to a Title VII action brought by the EEOC. *See EEOC v. Alioto Fish Co.*, 623 F.2d 86 (9th Cir. 1980) (Kennedy, J.); *EEOC v. American National Bank*, 574 F.2d 1173 (4th Cir. 1978), *cert. denied*, 439 U.S. 876, 99 S.Ct. 213, 58 L.Ed.2d 190 (1978). In *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), the Supreme Court recognized that even though the EEOC faced no statute of limitations in filing a complaint under Title VII, federal district courts possess the discretionary power to provide equitable relief to those defendants prejudiced by the EEOC's unreasonable delay. The Court stated:

> [A] defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts. If such cases arise the federal courts do not lack the power to provide relief. This court has said that when a Title VII defendant is in fact prejudiced by a private plaintiff's unexcused conduct of a particular case, the trial court may restrict or even deny backpay relief. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424–25, 95 S.Ct. 2362, 2374–75, 45 L.Ed.2d 280 [1975] The same discretionary power "to locate 'a just result' in light of the circumstances peculiar to the case," *ibid.*, can also be exercised when the EEOC is the plaintiff.

*Id.* at 373, 97 S.Ct. at 2458.

Where a defendant has been successful in establishing a laches defense, courts have exercised their traditional equitable powers in Title VII actions to dismiss entire cases, *see EEOC v. Dresser Industries, Inc.*, 668 F.2d 1199 (11th Cir.1982); *EEOC v. Alioto Fish Co.*, 623 F.2d 86 (9th Cir. 1980); *EEOC v. Liberty Loan Corp.*, 584 F.2d 853 (8th Cir.1978); *EEOC v. Martin Processing, Inc.*, 533 F.Supp. 227 (W.D.Va. 1982); *EEOC v. Bray Lumber*, 478 F.Supp. 993 (M.D.Ga.1979), or certain claims, *see EEOC v. Westinghouse Electric Corp.*, 592 F.2d 484 (8th Cir.1979), or restrict the damages available to the plaintiff, *see EEOC v. American Machine & Foundry, Inc.*, 13 FEP Cases 1634 (M.D.Pa.1976).

To be successful in establishing a laches defense, "the defendant must establish unreasonable or unexplained delay in bringing proceedings and resulting prejudice to the defendant." *EEOC v. Martin Processing, Inc.*, 533 F.Supp. at 229. With these principles in mind, the Court will turn its attention to the facts of the case, which are essentially uncontroverted.

On September 29, 1980, EEOC Commissioner Daniel Leach filed a charge of discrimination with the EEOC, charging PHH Group, Inc. and PHH, Inc. with unlawful discrimination against blacks and females with respect to recruitment, hiring, assignment, promotion and other terms, conditions and benefits of employment at their Maryland facilities. On October 10, 1980, the charge was forwarded to the defendants with an extensive data request. Between November 26, 1980, and February 11, 1981, no action was taken on the case while the case was reassigned to a second investigator. The defendants responded to the EEOC's first data request in March, 1981. In a memorandum to her supervisor, the EEOC investigator described defendants' response to the first data request as "cooperative[ ] and timely." (Exhibit 7 to Defendants' Motion to Dismiss and/or for Summary Judgment). As early as August, 1981, the defendants' representatives expressed a strong interest in conciliation. (Investigative Logs, Exhibit 6 to Defend-

---

11. Defendants also urge dismissal on the grounds that the EEOC has failed to establish, and cannot establish, a *prima facie* case of discrimination. This argument is premised on statistical evidence. Because there are outstanding discovery issues in the case involving statistical evidence, the Court has determined that resolution of this issue should be deferred until these other issues are resolved.

ants' Motion to Dismiss and/or for Summary Judgment, p. 237).

On September 15, 1981, the EEOC submitted a second data request to the defendants. The due date for this data request was October 5, 1981. The defendants responded to this data request in a piecemeal fashion, finally completing it on July 7, 1982. It was not until September 19, 1983, over fourteen months later, that a final draft investigative report was submitted by the EEOC investigator.

On February 8, 1984, the Commission issued a determination that there was reasonable cause to believe that the defendants discriminated against blacks and females in recruitment and hiring practices, promotions and wages. The EEOC was not prepared to commence conciliation discussions, however, until June, 1984. The parties met on June 29, 1984, to discuss conciliation, but the EEOC did not give defendants a detailed conciliation proposal until July 25, 1984. The conciliation proposal contained the names of the alleged affected class victims. Since the filing of the charge in 1980, this was the first notice provided defendants of the identity of the alleged affected class victims. Both parties exchanged letters and ideas during the conciliation process until January 30, 1985, when the EEOC declared that conciliation had failed. Nine and a half months later, on November 12, 1985, the EEOC filed this lawsuit. Defendants were served with a copy of the complaint on January 13, 1986.

### Inordinate Delay

There was a total period of delay of sixty-three months from the date Commissioner Leach filed a charge on September 29, 1980, to the date defendants were served with a copy of the complaint on January 13, 1986. Although a portion of the total delay is not chargeable to the EEOC,[12] there are several lengthy delays by the EEOC within the period which require further inquiry.

The most glaring delay is the thirty-six months between the filing of the Commissioner's charge and the completion of the EEOC investigator's final investigative report, a report that the investigator admitted was substantially the same as the draft final investigative report completed fifteen months earlier. (Deposition of EEOC Investigator Linda Blumner, Exhibit 1 to the Defendants' Motion to Dismiss and/or for Summary Judgment, p. 1161). The total time between the filing of the Commissioner's charge and the Commission's reasonable cause determination was forty months. After the reasonable cause determination was issued, four months went by before the EEOC was prepared to begin conciliation discussions. Although conciliation proceedings failed in January of 1985, it was nine and a half months before the EEOC filed suit and almost twelve months before the defendants were served with a copy of the complaint.

The EEOC has offered no explanation for the delays aside from its contention that the investigative case logs indicate continuous case activity throughout the period and that the nine and a half month gap between failure of conciliation and commencement of suit was not an inordinate amount of time to prepare a litigation recommendation for a complex pattern and practice suit. The Court will note that the nine and a half months culminated in a complaint couched in very general terms which totalled a little more than three pages.

Review of the investigative case logs bears out the EEOC's assertion that activity in the case was fairly consistent throughout the period. The fact that the activity was continuous, however, does not lead inexorably to a conclusion that the delay is reasonable. Delay will not be excused merely because the EEOC activity is continuous if the nature and quality of that activity are such as to not justify the delay.

---

12. For example, defendants were nine months late in completely responding to the EEOC's second data request. In addition, both plaintiff and defendants are responsible for the prolonged nature of the conciliation discussions from July 25, 1984, to January 30, 1985. Even assuming that defendants were fully responsible for these two delays, it still leaves a 48–month total delay which must be accounted for by the EEOC.

The Court is confident that had the investigation been more focused or had the EEOC allocated more human resources to this broad pattern and practice case,[13] the thirty-six months expended in the investigation could have been reduced considerably. Furthermore, but for the period where the defendants were late in fully complying with the EEOC's second data request, the defendants did nothing to hinder or slow down the EEOC's investigation.

A number of federal courts have found similar periods of delay unreasonable. *See, e.g., EEOC v. Alioto Fish, Co.*, 623 F.2d 86 (9th Cir.1980) (62 month total delay; 19 months before reasonable cause determination; 20 months from failed conciliation to filing of lawsuit); *EEOC v. Dresser Industries, Inc.*, 668 F.2d 1199 (11th Cir.1982) (68 month total delay; 16 month investigation until reasonable cause determination; 17 months from failed conciliation to filing of lawsuit); *EEOC v. Liberty Loan Corp.*, 584 F.2d 853 (8th Cir.1978) (52 month total delay; 27 months before reasonable cause determination, including 9 month investigation after amended charge; 12 month delay from failed conciliation to filing of lawsuit); *EEOC v. Martin Processing, Inc.*, 533 F.Supp. 227 (W.D.Va.1982) (53 month total delay; 29 months from filing of charge until initiation of formal investigation; 8 month investigation until reasonable cause determination; 12 month delay from failed conciliation to filing of lawsuit); *EEOC v. Bray Lumber*, 478 F.Supp. 993 (M.D.Ga. 1979) (53 month total delay; 36 months from initial charge to reasonable cause determination; 16 months from failed conciliation notice to filing of lawsuit).

■ This Court, consistent with other courts, refuses to find any specific period of delay by the EEOC unreasonable *per se. See Liberty Loan Corp.*, 584 F.2d at 857; *Martin Processing, Inc.*, 533 F.Supp. at 229. The EEOC's dilatory conduct throughout the investigation up until the commencement of the lawsuit, however, did result in inexcusable and unreasonable delays. As the court in *Liberty Loan Corp.* similarly found, "the delay was not only inordinately long, but was caused by the agency's unexplained failure to properly conduct its investigation." 584 F.Supp. at 857.

There is no factual dispute regarding the chronology of events in this case. Whether this chronology has resulted in "inexcusable" delay, however, is a conclusion of law for the Court. *EEOC v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 81 (3d Cir.), *cert. dismissed*, 469 U.S. 925, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984). The Court concludes that the defendants have demonstrated as a matter of law that the delays in this action were inexcusable and unreasonable.

### Prejudice

■ To sustain a defense of laches, however, the defendants must also prove that they suffered prejudice as a result of the delay. Generally, the issue of undue prejudice relates to whether the defendant has been crippled in its ability to succeed on the merits at trial. The " 'classic elements' of undue prejudice include unavailability of witnesses, changed personnel, and the loss of pertinent records." *Dresser Industries, Inc.*, 668 F.2d at 1203.

Prejudice is not restricted, however, to a defendant's ability to succeed on the merits. Where a defendant faces unfairly accentuated potential monetary damages directly attributable only to a plaintiff's unreasonable delays, that defendant suffers an even more palpable prejudice than the difficulty of defending itself at trial. *See Lingenfelter v. Keystone Consolidated Industries, Inc.*, 691 F.2d 339, 342 n. 2 (7th Cir.1982) ("[l]aches applies to protect a defendant not only from diminished likelihood of success on the merits at trial, but also

---

**13.** Prior to her assignment in February, 1981, the EEOC investigator assigned to the case had no experience with systemic discrimination charges. By her own admission, she was an "inexperienced investigator" when she was assigned to the PHH case. Moreover, aside from short periods of time, she was not assigned any assistants to help with the investigation. (Blumner Deposition, Exhibit 1 to the Defendants' Motion to Dismiss and/or for Summary Judgment, pp. 1097–98).

from unfairly accentuated damages occasioned only by a plaintiff's unreasonable delays"). Increased back pay liability has long been treated by courts as a factor to consider in evaluating prejudice to the defendant. *See Dresser Industries, Inc.*, 668 F.2d at 1204 n. 13; *Alioto Fish Co.*, 623 F.2d at 89.

■ The affidavit of Rita Ennis, Director of Employee Relations for PHH Group, demonstrates that the defendants have suffered some prejudice as a result of the EEOC's delay.[14] There has been substantial turnover of defendants' employees since 1978. Almost 60% of the present departmental decision makers have held their positions for two years or less. Only 39% of the executives, managers and supervisors with decision making authority who were employed by the defendants in January, 1978, are still employed by the defendants. Most of the remaining decision makers have undergone job changes within the companies via promotion or departmental transfer. Moreover, of those witnesses who remain, their memories of specific employment decisions have inevitably dimmed with the passage of time. *See, e.g., Pande v. Johns Hopkins University*, 598 F.Supp. 1084, 1088 (D.Md.1984). The substantial changes in the corporate structure in 1979 and 1980 has only served to exacerbate the task the defendants face in reconstructing the decision making process of individual employment decisions.

The defendants also contend that records have been lost, destroyed, removed or miscatalogued, especially for the years 1978 through 1980. When defendants were served with a notice of charge of discrimination on October 10, 1980, they were notified of the personnel records preservation requirement under section 1602.14(a) of the Code of Federal Regulations. This regulation requires employers to retain "all personnel records relevant to the charge."[15] The charge was broad in that it alleged discrimination in recruitment, hiring, assignment, promotion, training, and wages. Thus, the defendants were under a regulatory responsibility to maintain all personnel records pertaining to recruitment, hiring, assignment, promotion, training, and wages. Though the breadth of the charge made the defendants' record keeping obligation quite onerous, any records unavailable to defendants because they failed to comply with 29 C.F.R. § 1602.14 will not serve to establish prejudice. *See Great Atlantic & Pacific Tea Co.*, 735 F.2d at 84.

The defendants contend that they were under no legal obligation to maintain records from 1978 to 1980 because the charge had not yet been filed and, consequently, the record keeping obligation had not yet been triggered. Many of the EEOC's allegations involve the time period of 1978 to 1980. Because they were under no record keeping obligation before 1980, defendants proffer that records of the 1978–1980 time period were not maintained.

---

14. The EEOC has filed an extremely petty motion to strike Ms. Ennis' affidavit and other affidavits and exhibits attached to defendants' brief and reply brief in support of the motion to dismiss and/or for summary judgment (Paper 57). The EEOC contends that the Ennis affidavit and other affidavits and exhibits contain factual matters that do not meet the standard of admissibility at trial mandated by Rule 56(e) of the Federal Rules of Civil Procedure.

The Court has not relied on the statements in the affidavits or exhibits that the EEOC contends are inadmissible. Accordingly, the motion to strike will be denied.

For the same reason, the EEOC's motion to strike two exhibits attached to defendants' reply brief (Paper 58)—exhibit F (the affidavit of former EEOC General Counsel Abner W. Sibal) and exhibit U (the Job Interest Survey authored by Judith and David Peterson)—will be denied.

15. Section 1602.14(a) of the Code of Federal Regulations provides in pertinent part:

Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under title VII, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected.

**1224**

The Court has little sympathy for this position. At the time the EEOC Commissioner filed his charge, defendants were obligated to the MCHR to maintain employment records. On September 20, 1977, the MCHR forwarded to PHH, Inc. a charge of race and sex discrimination in recruitment and hiring practices. On April 2, 1979, PHH, Inc. entered into a Pre–Determination Settlement Agreement with the MCHR. This agreement obligated PHH, Inc. to file a written report on October 2, 1979, and each year thereafter, which would include a statistical analysis of applicants and hires classified by race and sex and a narrative and statistical report on promotions, transfer and training. This obligation to file reports with the MCHR gave the defendants sufficient reason to maintain the types of records from 1977 to 1980 that they were required to maintain from 1980 to the present under section 1602.14(a) of the Code of Federal Regulations. Accordingly, the loss of personnel records cannot be a basis for establishing prejudice.

In *EEOC v. American National Bank*, 574 F.2d 1173 (4th Cir.1978), the Court of Appeals for the Fourth Circuit determined that a district court should not decide whether EEOC delays have caused prejudice to a defendant until all the facts have been developed. In the present case, the Court has reviewed the plethora of documents, affidavits and exhibits from both parties on the issue of prejudice. The papers defendants have submitted to the Court contain more than mere "generalized assertions" of prejudice. *See EEOC v. Chesapeake & Ohio Railway Co.*, 577 F.2d 229, 234 (4th Cir.1978).

The Court concludes that the defendants have established substantial prejudice in defense of the claims for back pay, and, accordingly, summary judgment on the grounds of laches must be granted on all such claims. During the EEOC's administrative delays, the back pay meter has been running, thus exposing the defendants to greater pecuniary losses. With respect to the back pay claims, the EEOC has dealt defendants a double-fisted blow. The passage of time has hindered the defendants in their ability to prevail on the merits while at the same time inflating the potential damages defendants face if they do not prevail.

The EEOC also seeks injunctive relief against alleged discriminatory practices and affirmative relief to eradicate the past and present effects of discriminatory employment practices. The Court concludes that the prejudice the defendants suffered is not of sufficient magnitude to warrant dismissal of the entire action. Although there has been substantial turnover among departmental decision makers and memories have dimmed among those decision makers who remain in the defendants' employ, the defendants have been obligated, either as a matter of necessity or federal regulation, to maintain their personnel records at least since 1977. Moreover, the defendants have indicated their intention to utilize statistical evidence in their defense of this pattern and practice suit. Because such evidence is not dependent on the availability and memories of witnesses, the defendants will be capable of preparing a defense.

Courts have the discretionary power "to locate 'a just result' in light of the circumstances peculiar to the case." *Occidental Life Insurance Co. v. EEOC*, 432 U.S. at 373, 97 S.Ct. at 2458. In the instant case, that "just result" is the dismissal of all claims for back pay, but the retention of all claims for injunctive and affirmative relief. As the Supreme Court stated in *Occidental Life Insurance Co. v. EEOC*, "when a Title VII defendant is in fact prejudiced by a private plaintiff's [or the EEOC's] unexcused conduct of a particular case, the trial court may restrict or even deny backpay relief." 432 U.S. at 373, 97 S.Ct. at 2458.

The Court reaches this result with caution because it is mindful of the important national employment policy objectives fulfilled by the EEOC and the scarce resources it has in meeting this responsibility. Inexcusable delays by the EEOC in the pursuit of its investigation and litigation objectives, however, will not be countenanced when they cause undue prejudice

to a defendant.[16] At that juncture, the EEOC's mandate of vindicating the public interest in eliminating employment discrimination must be reconciled with traditional principles of equity.

### (B)
### 180–DAY LIMITATIONS PERIOD UNDER SECTION 706(e)

■ The defendants also contend that section 706(e) of Title VII bars any remedy for those individuals who suffered discrimination as a result of pre-April 10, 1980, personnel decisions. Section 706(e) of Title VII requires that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred...." 42 U.S.C. § 2000e–5(e). Defendants seek dismissal of the complaint insofar as it seeks remedial relief for individuals who were discriminated against more than 180 days before the discrimination charge was filed on October 10, 1980.

At the outset, the Court will note that its dismissal of back pay claims renders this issue insignificant. The Court will address the issue, however, for the benefit of the parties and in furtherance of creating a complete record for any appeal.

■ Defendants contend that a charge of employment discrimination under Title VII must be filed within 180 days after the alleged unlawful employment practice.[17] This is entirely correct. The defendants also contend that only those individuals who personally suffered discrimination as a result of PHH, Inc. employment decisions made after April 10, 1980, the date the 180–day filing period began, can seek a remedy in this action. The EEOC asserts that this case involves allegations of widespread discrimination in hiring and promotion and that the defendants' practices establish a "continuing violation" towards blacks and females. Because there is a "continuing violation," the EEOC states that only one incident of discrimination within the 180–day filing period must be established in order to extend the filing period for all class members.

The Court of Appeals for the Fourth Circuit has made it clear that the continuing violation theory will apply *"only* where an actual violation has occurred within th[e] requisite time period." *Woodard v. Lehman*, 717 F.2d 909, 915 (4th Cir.1983). *See, e.g., Hill v. AT & T Technologies, Inc.*, 731 F.2d 175, 180 (4th Cir.1984). The parties agree on this standard. They differ as to whether each class member must suffer an incident of discrimination within the prior 180 days to the charge in order to be afforded a remedy.

In *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed. 2d 571 (1977), an employer rehired an employee who it had earlier discharged as a result of a discriminatory "no-marriage" policy. The Supreme Court ruled that the employer's refusal to grant retroactive seniority to the rehired employee was not a Title VII violation, when that employee had failed to file a timely charge with the EEOC at the time of her discharge. The Court stated that "the critical question is whether any present *violation* exists," *id.* at 558, 97 S.Ct. at 1889, and that "[a] discriminatory act which is not made the

---

**16.** In *EEOC v. Bell Helicopter Co.*, the court stated:

> there must be a limit to the prejudice and inconvenience that can be placed on an employer because of the [EEOC's] inability or unwillingness to act promptly.... The public policy expressed in Title VII of the Act was declared by Congress. The Commission itself was established by Congress. If Congress does not see fit to adequately staff or fund the Commission to carry out its declaration of policy, that also is a congressional decision.

426 F.Supp. 785, 793 (N.D.Tex.1976).

**17.** Where a "person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief," the section 706(e) charge must be filed within 300 days of the alleged unlawful employment practice. Because the State of Maryland, through the MCHR, provides a state agency capable of providing relief from discrimination, Maryland is a Title VII deferral state. *Soble v. University of Maryland*, 572 F.Supp. 1509, 1512 (D.Md.1983), *aff'd,* 778 F.2d 164 (4th Cir.1985). The 300–day filing deadline does not apply to the instant case, however, because an EEOC Commissioner is not required to defer nor did he in fact defer to the MCHR on the charge. Thus, the 180–day filing period is the applicable filing deadline.

basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed." *Id.* at 558, 97 S.Ct. at 1889. The *Evans* Court made clear that neither the lingering effects of a past discriminatory act nor the perpetuation of the employment relationship with a particular individual into the filing period, without more, will permit use of the continuing violation theory.

*Evans,* however, dealt only with a one-time violation (a discriminatory discharge) which had a lingering effect only because of an otherwise neutral seniority system. What distinguishes the instant action from *Evans* is that this case involves allegations of a long-standing pattern and practice of discrimination continuing into the limitations period. The EEOC's allegations represent a broad attack on what they have argued are presently maintained discriminatory practices of recruitment, promotion, assignment, compensation and training impacting on Title VII protected classes. It is the ongoing program of discrimination which the EEOC attacks more than any of its particular manifestations. If the EEOC can prove these allegations, the EEOC filing will be treated as relating back to the onset of the discriminatory period, bringing pre-limitations period acts of discrimination within the limitations period.

The EEOC has put forth sufficient evidence of a long-standing practice of discrimination against blacks and females to render the existence of a continuing violation a genuine fact issue. For example, there is probative evidence that during the filing period blacks and females were not hired in the defendants' sales department because of a known program and policy of discrimination. Such a program is fertile ground for the continuing violation theory because "each time the company hires [or promotes], it violates Title VII so long as its discriminatory policy is in effect." *Roberts v. North American Rockwell Corp.,* 650 F.2d 823, 827 (6th Cir.1981).

Of course, the EEOC will still have to prove at trial that defendants' employment decisions were not discrete and sporadic acts, but were carried out pursuant to a consistent policy. This policy, however, need not be "express" and "openly espoused." *Stewart v. CPC International, Inc.,* 679 F.2d 117, 121 (7th Cir.1982). "Continuing violations also arise from covert practices," *EEOC v. Chicago Miniature Lamp Works,* 640 F.Supp. 1291, 1295 (N.D.Ill.1986), particularly if the discrimination is "pervasive or longstanding," B. Schlei & P. Grossman, *Employment Discrimination Law,* 1052 (2d ed. 1983).

Maintenance of a discriminatory system of employment into the limitations period adversely affects not only those immediately subjected to it but all employees and job applicants who are members of that Title VII protected classes. Thus, if the EEOC can prove that the defendants engaged in a continuous course of discrimination against blacks and females which extended into the 180–day limitations period, relief will be afforded not only to those who suffered discrimination within the 180–day period, but to those who suffered discrimination before the 180–day period. *See EEOC v. Chicago Miniature Lamp Works,* 640 F.Supp. at 1296. *See also Guardians Assoc. of the New York City Police Department, Inc. v. Civil Service Commission of the City of New York,* 633 F.2d 232, 251 (2d Cir.1980), *aff'd,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983) ("[a]ll plaintiffs injured by the department's post-Act adherence to [a discriminatory hiring policy] are therefore entitled to relief").

Defendants' motion will be denied on this issue.

### (C)
### AFFIRMATIVE ACTION PROGRAMS

Defendants also argue that the affirmative action efforts they have taken negate an inference of intentional discrimination and that because there is no reasonable expectation of a recurrent discriminatory violation, the EEOC's claim for injunctive relief is moot and should be dismissed. They contend that they have voluntarily initiated extensive affirmative action and related programs, thus rendering injunctive relief inappropriate and unnecessary.

■ First, post-complaint actions taken by a defendant to remedy the effects of past discrimination do not negate the injuries suffered by those subject to a long-standing pattern and practice of discrimination. As was stated in *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421, 426 (8th Cir.1970), "[w]hile an employer's more recent employment practices may bear upon the remedy sought, they do not affect the determination of whether the employer previously violated Title VII." *See, e.g., Donnell v. General Motors Corp.*, 576 F.2d 1292, 1298 n. 11 (8th Cir. 1978); *Hameed v. International Association of Bridge Workers*, 637 F.2d 506, 512 n. 7 (8th Cir.1980); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 346 (10th Cir.1975) (post-filing statistics not cogent evidence of lack of pre-filing discrimination; if anything, post-filing improvement might tend to show existence of prior discrimination and an effort to repair the harm after discovery); *Rice v. Gates Rubber Co.*, 521 F.2d 782, 785 (6th Cir.1975) ("[t]he belated actions of [the employer-defendant], although commendable, are not sufficient to rebut a prima facie case of discrimination at an earlier time, if one should be established").

■ Nor do defendants' affirmative action programs render the EEOC's request for injunctive relief moot. The Court is well aware that court dockets, which are already overburdened, should not be further burdened with moot actions. Mere unilateral cessation of prohibited discriminatory practices, however, is no guarantee that the prohibited practices will not recur. *See, e.g., United States v. Local No. 86, International Association of Bridge, Structural, Ornamental and Reinforcing Ironworkers*, 315 F.Supp. 1202, 1235 (W.D. Wash.1970), *aff'd*, 443 F.2d 544 (9th Cir.), *cert. denied*, 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971). In the context of a Title VII action, the quality and permanence of nascent Title VII compliance efforts conducted in response to litigation must be carefully scrutinized by courts. As was stated in *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953),

[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot.... The defendant is free to return to his old ways. This together with a public interest in having the legality of the practices settled, militates against a mootness conclusion....

....

Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct.... The purpose of an injunction is to prevent future violations....

Because there is a genuine factual issue as to whether there is a reasonable likelihood that defendants will violate Title VII in the future, defendants' motion will be denied as to the EEOC's claims for injunctive relief.

### (D)
### DETERRED APPLICANTS

■ Defendants also seek partial summary judgment as to claimants who failed to apply for employment with the defendants because they were deterred from submitting an application. Although there is nothing in the complaint to suggest that a class of "deterred applicants" is part of the case, defendants allege, and the EEOC does not deny, that the EEOC seeks relief in this action for deterred applicants. Defendants contend that the EEOC has failed to identify any members of a class of deterred applicants and that, consequently, the EEOC has failed to establish a *prima facie* case as to that class.

In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court stated:

[t]he effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity. A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject

themselves to the humiliation of explicit and certain rejection.

*Id.* at 365, 97 S.Ct. at 1870. Thus, failure to apply for a position is not an absolute bar to recovery under Title VII. The nonapplicant must establish, however, (1) that he would have applied for a position but for his awareness of the defendant's unlawful discrimination and (2) that had he applied, his application would have been discriminatorily rejected. *Id.* at 368 n. 52, 97 S.Ct. at 1871 n. 52. The "existence *vel non* of a defendant's reputation for discrimination is a relevant fact in determining whether an individual nonapplicant would have applied to the defendant but for the defendant's discrimination because it buttresses his testimony that he was aware of the discriminatory practices of the defendant." *EEOC v. Sheet Metal Workers, International Association, Local No. 122,* 463 F.Supp. 388, 426 (D.Md.1978).

 Through affidavits, the EEOC has provided probative evidence that defendants had a reputation for sex and race discrimination among its employees and in the general community. In addition, the EEOC has filed a Motion for Leave to Publish Notice of Action and Defendants' Settlement Offer (Paper 45) in order to discover the identity of individuals who were deterred from applying for employment with the defendants. Whether the EEOC will be capable of sustaining a claim as to deterred applicants at trial is not the issue now before the Court. The issue pending before the Court is whether the EEOC has put forth sufficient proof to create a genuine issue of fact as to the existence of deterred applicants. This it has done. Accordingly, the defendants' motion on the issue of deterred applicants will be denied.

In sum, the Court has granted the defendants' motion, being treated as a motion for summary judgment, only as to the claim for money damages. Defendants' motion is denied in all other respects.

## ORDER

In accordance with the aforegoing Opinion filed today, IT IS, this 4th day of January, 1989, by the United States District Court for the District of Maryland,

ORDERED:

(1) That Defendants' Motion to Dismiss on the Basis of Prior MCHR Proceedings and Settlement (Paper 15), being treated as a Motion for Summary Judgment, BE, and the same hereby IS, DENIED;

(2) That Defendants' Motion to Dismiss and/or for Summary Judgment (Paper 16), being treated as a Motion for Summary Judgment, BE, and the same hereby IS, GRANTED IN PART and DENIED IN PART as follows:

(a) the motion is granted as to plaintiff's claim for money damages;

(b) the Court reserves its decision on defendants' assertion that plaintiff cannot establish a *prima facie* case of discrimination; and

(c) the motion is denied in all other respects;

(3) That Plaintiff's Motion to Strike, incorporated in Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss (Paper 23) BE, and the same hereby IS, DENIED;

(4) That Plaintiff's Motion to Strike Affidavits and Exhibits from Defendants' Brief and Reply Memorandum in Support of their Motion to Dismiss and/or for Summary Judgment for Failure to Comply with F.R.Civ.P. 56(e) (Paper 57) BE, and the same hereby IS, DENIED;

(5) That Plaintiff's Motion to Strike Evidence Introduced by Defendants' Reply Memorandum in Support of Motion to Dismiss and/or for Summary Judgment or, Alternatively, Motion for Leave to File Surrebuttal Memorandum (Paper 58) BE, and the same hereby IS, DENIED.