**UNITED STATES EQUAL EMPLOY-MENT OPPORTUNITY COMMIS-SION, et al., Plaintiffs,**

v.

**WORTHINGTON, MOORE & JACOBS, INC., Defendant.**

Civil No. L–04–3127.

United States District Court,
D. Maryland.

Oct. 22, 2008.

Maria Luisa Morocco, Debra Michele Lawrence, Gerald S. Kiel, Gwendolyn Young Reams, Maria Salacuse, US Equal Employment Opportunity Commission, Baltimore, MD, for Plaintiffs.

Jeanne M. Phelan, Whiteford Taylor and Preston LLP, Baltimore, MD, for Defendant.

### *MEMORANDUM*

BENSON EVERETT LEGG, Chief Judge.

Now pending in this Title VII sexual harassment and retaliation suit is defendant Worthington, Moore, & Jacobs, Inc.'s ("WMJ") Motion for Partial Summary Judgment against Plaintiffs Lynne Geers and Diana Bantom. For the reasons stated herein, the Court will, by separate Order filed this date, DENY the motion.

### I. *BACKGROUND*

On September 30, 2004, the Equal Employment Opportunity Commission ("EEOC") filed a Complaint on behalf of Jill Hennen, Elizabeth Ford, Melanie Sandy, Lynne Geers, Diana Bantom, Laura Thomas, Nancy Guzman, and other unnamed female employees of WMJ. The Complaint alleges that WMJ violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, by engaging in quid pro quo sexual harassment, hostile work environment sexual harassment, and retaliation.[1]

All seven women were formerly employed by WMJ, a commercial debt-collection firm with offices in Ellicott City, Maryland and Dover, Delaware. Ms. Bantom and Ms. Geers were employed at WMJ from August 2000 to January 2001, and July 1998 to July 2002, respectively. While all seven women—including Geers and Bantom—were employed at WMJ, Sam Muffoletto served as company president and David Caprario served as CEO.

The allegations of all seven women named in the complaint center upon the actions of Sam Muffoletto. The claimants charge that Muffoletto touched them inappropriately, propositioned them, asked to share hotel rooms with them on business trips, and repeatedly made inappropriate sexual comments. They allege that the company not only turned a deaf ear to their complaints but retaliated through a variety of adverse employment actions, including retaliatory harassment, termination, and constructive discharge.

The Court's prior rulings in the case are memorialized in a Memorandum and Order of March 30, 2007[2] and an Order of April 20, 2007.[3] To summarize, WMJ moved for summary judgment against all seven claimants on the ground that their claims were barred by laches. The Court denied the motion with respect to the

---

1. Thomas and Guzman have since retained their own attorneys and intervened in the action. *See* Fed.R.Civ.P. 24.

2. *See* Docket Nos. 104 and 105.

3. *See* Docket No. 109.

claims of Hennen, Ford, and Sandy. The Court ordered additional briefing regarding WMJ's laches defense as it pertains to the claims of Bantom and Geers. The parties have filed supplemental briefs. For the reasons stated herein, the Court will, by separate order, DENY WMJ's Motion for Partial Summary Judgment against Bantom and Geers. The case will proceed to trial.

## II. STANDARD FOR SUMMARY JUDGMENT

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party. *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282 (4th Cir.1987).

## III. ANALYSIS

### A. Factual Background

The original sexual harassment charges that resulted in this suit were filed with the EEOC in 2001 by Hennen, Ford and Sandy. On March 27, 2002, the EEOC made "no cause" determinations and issued right-to-sue notices to the claimants informing them that they had 90 days to file a civil action. None of them chose to file suit, however.

Several months later, in May 2003, Thomas filed charges with the EEOC based on Muffoletto's conduct. In January 2004, Guzman filed similar charges. The EEOC's investigation of Thomas and Guzman's charges prompted the agency, on April 13, 2004, to reopen the earlier claims of Hennen, Ford, and Sandy. The investigation also identified two additional women, Bantom and Geers, who claimed to have been harassed by Muffoletto. On September 30, 2004, the EEOC filed the instant lawsuit on behalf of all seven women.[4] Although WMJ was not formally served until January 20, 2005, it had been involved in the investigations, it knew the names of the seven women whose claims were under review, and it was aware that their claims centered on Mr. Muffoletto's behavior towards them. On March 5, 2005, Sam Muffoletto died.

In asserting laches, WMJ points to the three-year delay between 2001, when the original claims were filed, and 2004, when the agency filed suit.[5] WMJ argues that had the EEOC prosecuted the claims "in a seasonable manner," Muffoletto would have been available to testify on behalf of the company.[6] Because of the agency's unreasonable delay, Muffoletto is now dead and, therefore, unable to assist the company in refuting the claims.

### B. Analytical Framework

A private individual who lodges a claim of discrimination must meet stringent time

---

4. Bantom and Geers never filed claims with the EEOC.

5. The EEOC filed the complaint on September 30, 2004. Docket No. 1.

6. *See* Docket No. 78.

requirements. First, the individual must file a claim with the EEOC within either 180 or 300 days of the alleged discriminatory events. 42 U.S.C. § 2000e–5(e). The EEOC investigates the charge and issues either a "reasonable cause" or "no cause" determination and a right-to-sue notice. The employee then has 90 days to file suit in court. 42 U.S.C. § 2000e–5(f)(1). If she does not file within 90 days, her suit is time barred.

■ The EEOC can bring suit on behalf of anyone who has filed a timely charge of discrimination (a "charging party"). It can also use the charge as a "jurisdictional springboard" [7] to bring suit on behalf of other individuals. See General Telephone Co. v. EEOC, 446 U.S. 318, 332, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) ("Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable.").

■ There is no statute of limitations on actions filed by the EEOC. See Occidental Life Insurance Co. v. EEOC, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (holding that neither 42 U.S.C. § 2000e–5(f) nor state limitations periods apply to actions by the EEOC). If, however, a defendant is prejudiced by the EEOC's unexcused delay in bringing suit, a court may fashion relief under the doctrine of laches. See id.[8] The laches test requires the defendant to prove (1) lack of diligence by the plaintiff, and (2) prejudice to the defendant. White v. Daniel, 909 F.2d 99, 102 (4th Cir.1990). Lack of diligence is demonstrated when "a plaintiff has unreasonably delayed in pursuing his claim." Id. There is no per se rule that defines an "unreasonable" time period for

conducting an EEOC investigation. See Peterson, 702 F.Supp. at 1222. Nor is there a bright line test for determining when a defendant has suffered substantial prejudice. Prejudice can include the unavailability of witnesses, changed personnel, and the loss of pertinent records. See EEOC v. Massey–Ferguson, Inc., 622 F.2d 271, 278 (7th Cir.1980); EEOC v. Liberty Loan Corp., 584 F.2d 853, 858 (8th Cir. 1978).

In an earlier opinion, the Court instructed the parties that two issues must be addressed if WMJ wished to pursue the laches defense. First, the Court requested the parties to brief whether the EEOC had the authority to bring suit on behalf of the five women. Second, the Court requested the parties to apply the laches defense to the facts of this case.

To summarize the relevant facts, the EEOC has filed suit on behalf of three sets of claimants. The first set includes Hennen, Ford, and Sandy. They filed EEOC charges in 2001. The EEOC terminated its investigation in 2002 and issued right-to-sue notices to the three women. None of the women filed suit within the requisite 90 day period. In 2003, and 2004, two additional WMJ employees, Thomas and Guzman, filed claims with the EEOC. During the investigation, the agency reopened the earlier claims of Hennen, Ford, and Sandy. The investigation also identified two additional women, Bantom and Geers, who claimed to have been harassed by Muffoletto. In September 2004, the EEOC filed suit against WMJ on behalf of all seven women. With this framework in mind, let us turn to the three claimant groups.

---

7. *EEOC v. General Elec. Co.*, 532 F.2d 359, 364 (4th Cir.1976) (quoting *EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453, 455 (5th Cir.1975)).

8. Defendants may assert this defense against the EEOC. *See EEOC v. Navy Federal Credit Union*, 424 F.3d 397, 409 (4th Cir.2005); *EEOC v. Peterson, Howell & Heather, Inc.*, 702 F.Supp. 1213 (D.Md.1989).

## C. Hennen, Sandy and Ford

### 1. *EEOC's Authority to Bring the Suit*

█ WMJ advances three grounds why the agency may not file suit on behalf of Hennen, Sandy, and Ford. First, they are not "charging parties." Second, their claims were not "reasonably ascertained" during the course of an EEOC investigation. Third, their claims are barred by laches.

In an earlier opinion, the Court concluded that Hennen, Sandy and Ford are not "charging parties." [9] This failure is not necessarily fatal, as the EEOC is authorized to reopen a claim that has been "ascertain[ed] in the course of a reasonable investigation of the charging party's complaint." *General Telephone Co.*, 446 U.S. at 332, 100 S.Ct. 1698. The Court concludes that the agency properly "ascertained" their claims during the course of the Thomas and Guzman investigation. Although the agency's 2001 investigation did not prompt the EEOC to file suit, the agency later "uncovered" facts during the Thomas/Guzman investigation which did support charges of discrimination by Mr. Muffoletto *See EEOC v. General Electric Co.*, 532 F.2d 359, 365 (4th Cir.1976) ("If the EEOC uncovers during [its] investigation facts which support a charge of another discrimination than that in the filed charge, it is neither obligated to cast a blind eye over such discrimination nor sever those facts."). The EEOC attributes the different conclusions reached in the 2001 and 2004 investigations to changes in personnel and new facts that emerged in the later investigation.[10] The agency, therefore, has made a sufficient showing that the Hennen, Ford and Sandy claims were "reasonably ascertained" during the course of its Thomas/Guzman investigation. Thus, the EEOC is authorized to bring suit on their behalf.

### 2. *The Laches Defense*

The agency's claim on behalf of the three women is subject to a laches defense. As stated above, the doctrine of laches has two prongs: (1) unreasonable delay by the plaintiff and (2) prejudice to the defendant that results from the plaintiff's unreasonable delay. *See White*, 909 F.2d at 102.

█ First, WMJ argues that the EEOC "unreasonably delayed" in prosecuting the claims of the three women because the agency should have filed suit in 2002.[11] Next, WMJ asserts that EEOC's delay resulted in substantial prejudice due to the death of its key witness, Sam Muffoletto.[12] Because many of the claims of harassment are alleged to have occurred during private encounters between the claimants and

---

9. *See* Docket Nos. 104 and 105. All three women failed to file suit within 90 days after receiving right-to-sue letters. The EEOC reopened the charges pursuant to 29 C.F.R. § 1601.19(b), which permits it to reconsider a "no cause" finding and issue a "notice of intent to reconsider." Section 1601.19(b) does not place a time limit on an EEOC decision to reconsider a "no cause" determination. Courts, however, have routinely held that agencies must reconsider decisions within a "reasonable time period." *See, e.g., Dun & Bradstreet Corp. Foundation v. U.S. Postal Service*, 946 F.2d 189, 193–94 (2d Cir.1991). Because the EEOC waited more than two years to reopen the three charges, the Court found that the EEOC exceeded its authority

when it reopened the charges. Thus, the three original claimants were not "charging parties."

10. *See* Docket No. 115.

11. *See* Docket No. 78.

12. According to WMJ, Mr. Muffoletto's death nearly two months after the filing of EEOC's complaint, was unexpected. WMJ states that "[a]lthough Mr. Muffoletto had diabetes, there was no indication his condition was life-threatening.... Mr. Muffoletto's death was sudden and unexpected and did not afford an opportunity for a deposition to preserve his testimony." Docket No. 92.

Mr. Muffoletto, WMJ asserts that Muffoletto's unavailability during trial is "highly prejudicial" to its case. WMJ attributes its failure to preserve Mr. Muffoletto's testimony to the fact that EEOC neglected "to inform Defendant of the Geers and Bantom allegations or to seek Defendant or Muffoletto's responses to them in the course of the investigation." Docket No. 114.

It is true that Sam Muffoletto, a principal witness for the defense, died less than two months after the EEOC filed its civil suit. Nevertheless, WMJ was aware of several charges of sexual harassment against Mr. Muffoletto from the early stages of the investigation. The charges of the three original claimants date back to 2001. The company, therefore, had ample time to investigate those claims and memorialize Mr. Muffoletto's side of the story.

In a previous opinion, the Court directed the parties to investigate whether the prejudice against WMJ could be mitigated by evidentiary rulings. In response, the EEOC has proffered several avenues through which prejudice may be alleviated. For instance, the Court can minimize the prejudice at trial by relaxing the hearsay rule to admit Mr. Muffoletto's written statements, as well as the oral denials of discrimination that he made to his son, Mark Muffoletto. Company officials who observed Mr. Muffoletto's interactions with the claimants and other female employees may also testify as to his comportment. The EEOC has agreed to stipulate to statements made by both the company and Mr. Muffoletto which broadly deny that he engaged in a pattern or practice of harassment. Introduction of this evidence may reasonably state Mr. Muffoletto's side of the story, even though he is unavailable to testify.

At this moment, any finding of prejudice that WMJ suffered as a result of EEOC's delay is a matter best reserved for resolution at trial. *See EEOC v. American National Bank,* 574 F.2d 1173, 1176 (4th Cir. 1978) (finding that any determination that "the commission's delays caused prejudice . . . can best be considered after the facts have been fully developed"). If the facts reveal that WMJ has, indeed, suffered prejudice at the hand of EEOC's delay, the Court can take this into consideration when crafting an appropriate damage award. *See Occidental Life,* 432 U.S. at 373, 97 S.Ct. 2447 (noting that "when a Title VII defendant is in fact prejudiced by a private plaintiff's unexcused conduct of a particular case, the trial court may restrict or even deny backpay relief"); *EEOC v. Chesapeake & Ohio Ry. Co.,* 577 F.2d 229, 233 (4th Cir.1978). But until the facts have been fully developed, any decision made regarding prejudice to WMJ would rest solely on "generalized assertions." *Id.* at 234. The Court finds no substantial prejudice to WMJ and, therefore, its laches defense fails.

### D. Thomas and Guzman

Thomas and Guzman each filed timely charges with the EEOC in May 2003 and January 2004, respectively. Thus, they are "charging parties." Moreover, WMJ concedes that their claims are not barred by laches. Thomas and Guzman's claims may proceed to trial.

### E. Bantom and Geers

#### 1. *EEOC's Authority to Bring the Suit*

■ Had Bantom and Geers brought their claims as individuals, those claims would have been barred by the statute of limitations. This follows because neither person filed a claim with the EEOC within either 180 or 300 days of the allegedly discriminatory events. 42 U.S.C. § 2000e–5(e). Nevertheless, if the EEOC had authority to bring suit on their behalf, then Bantom and Geers' claims could properly

be presented alongside those of the three original claimants.

Because Bantom and Geers never filed EEOC claims, they are not "charging parties". The Court, nonetheless, concludes that the agency "ascertained" their claims during the course of the Thomas/Guzman investigation. *See General Electric,* 532 F.2d at 365. *See also EEOC v. General Motors Co.,* 826 F.Supp. 1122, 1127 (N.D.Ill.1993) (holding that "the EEOC may properly bring a claim based on discrimination against a *class* of individuals where such a claim arises out of the investigation of an *individual* charge") (emphasis added). Although the record on this issue is sparse, it appears that the EEOC, while investigating the Guzman/Thomas claims, unearthed evidence that Mr. Muffoletto also sexually harassed Bantom and Geers. The Court accepts the EEOC's assertion that it "uncovered" these facts during its investigation of the Thomas/Guzman charges. *See General Electric,* 532 F.2d at 365. Thus, the agency has standing to bring claims on behalf of Bantom and Geers.

### 2. *The Laches Defense*

■ The Court finds that Bantom and Geers' claims are not barred by laches. First, the Court finds no unreasonable delay in the EEOC's pursuit of their claims. Bantom and Geers were discovered as potential claimants only five months prior to the EEOC's filing of the instant lawsuit. Five months does not constitute unreasonable delay. Moreover, the same prejudice analysis that was applied to the Hennen, Ford, and Sandy claims is equally applicable to Bantom and Geers. Accordingly, WMJ's laches defense likewise fails as applied to Bantom and Geers.

The Defendant's Motion for Summary Judgment based on the defense of laches is hereby DENIED. Because of the age of this case, the Court will schedule an expedited settlement meeting and a back-up trial date.

### IV. *CONCLUSION*

For the reasons stated herein, the Court will, by separate Order filed on this date, DENY WMJ's Motion for Summary Judgment as to Geers and Bantom, based on a defense of laches Docket Nos. 78 and 114. The Court will SCHEDULE an expedited settlement conference with a magistrate judge. The Court will also SCHEDULE a back-up trial date in the event that the case does not settle.

### *ORDER*

For the reasons set forth in the Memorandum of even date, the Court hereby DENIES Defendant's Motion for Partial Summary Judgment. Docket Nos. 78 and 114. The Court will SCHEDULE an expedited settlement conference with a magistrate judge and will SCHEDULE a back-up trial date in the event the case does not settle.